**VDO–ARGO INSTRUMENTS, INC.**

v.

**The UNITED STATES.**

No. 333–82T.

United States Claims Court.

Sept. 21, 1983.

Lester A. Katz, Washington, D.C., for plaintiff; Gerard J. Mene, Arlington, Va., of counsel.

Maxine C. Champion, Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

YOCK, Judge.

This case comes before the Court on defendant's motion to dismiss filed April 1, 1983, the plaintiff's opposition thereto, and the defendant's reply. Because this Court finds that plaintiff has filed his claim outside of the applicable statute of limitations, the defendant's motion to dismiss must be granted, and the plaintiff's complaint dismissed.

### Facts

The plaintiff, VDO–ARGO Instruments, Inc. (VDO–ARGO), a Virginia corporation, is the successor corporation of VDO Instruments, Ltd., resulting from a corporate reorganization consummated December 31, 1977. Plaintiff employs the accrual method of accounting and files its federal income tax returns on a calendar year basis.

After obtaining two separate three-month extensions of time, VDO–ARGO filed its fiscal year 1977 corporate income tax return on September 15, 1978, with the IRS Service Center in Memphis, Tennessee. This return reflected a net operating loss (NOL) of $529,039. Accordingly, the Internal Revenue Service (IRS) refunded $22,-915, representing taxes paid for 1977, along with interest of $1,172.12, totaling a refund of $24,087.12. On December 19, 1978, plaintiff filed a Corporate Application for Tentative Refund (Form 1139) to carryback VDO–ARGO's 1977 NOL to its 1974, 1975, and 1976 tax years with the IRS Service Center in Philadelphia, Pennsylvania.[1]

---

1. While not essential to the Court's disposition of the Government's motion to dismiss, the Court would note that the plaintiff's tentative carryback adjustment application indicated that VDO–ARGO's 1977 tax return had been filed with the Philadelphia Service Center, when in fact the return had been filed with the Memphis, Tennessee Service Center. This resulted in confusion between the plaintiff and

VDO–ARGO's NOL carryback eliminated taxable income for the years 1974, 1975 and 1976. Thus, the investment tax credit which was applied against income taxes in those years was unused and was carried back to offset income taxes for the years 1971, 1972 and 1973. This was accomplished by VDO–ARGO filing amended income tax returns (Form 1120X) on October 18, 1979 for the years 1971, 1972 and 1973, with the IRS Service Center in Cincinnati, Ohio.

In each of the amended returns, VDO–ARGO stated, in the returns themselves and in a schedule attached thereto, that the refund claims for 1971, 1972, and 1973 income taxes were based solely upon the fact that the 1977 net operating loss had been carried back to offset 1974, 1975 and 1976 taxable income. More specifically, in the explanation provision provided in each of the amended returns in Part II, Explanation of Changes to Income, Deductions and Credits, etc., VDO–ARGO explained that the carryback of 1974 [1975][2] investment tax credit resulted from the 1977 net operating loss carryback to tax years 1974, 1975 and 1976. In addition, attached to each of the amended returns was a handwritten schedule, on which, in pertinent part, the following was written: "INVESTMENT TAX CREDITS AVAILABLE DUE TO CARRYBACK OF 1977 NOL TO TAX YEAR ENDING DECEMBER 31, 1974, 1975 AND 1976." Also, attached to each amended return was a Form 1139 application for tentative refund of the investment tax credit that was being carried back from the years 1974, 1975 and 1976 to the years 1971, 1972 and 1973.

The IRS received, acknowledged, processed and entered a determination on the amended income tax returns before the statute of limitations period for filing a refund claim for the taxable year 1977 had expired. In this regard, on November 5, 1979, the IRS Service Center in Cincinnati acknowledged, by letter, the receipt of the amended returns. On January 14, 1980, the Cincinnati Service Center by letter, requested from VDO–ARGO a copy of its 1977 income tax return. It also requested the plaintiff to file Form 1120X (Amended U.S. Corporation Income Tax Return) with them for tax years 1974, 1975 and 1976 in order to show the carryback of the net operating loss from 1977. On March 5, 1980, the Cincinnati Service Center notified VDO–ARGO, by letter, that it had disallowed the claims for refund contained in the amended income tax returns for 1971, 1972 and 1973. The stated reason given for the denial of the claims was that the IRS had no record of VDO–ARGO's 1977 income tax return and had not received a copy of it from the plaintiff as requested.[3]

On June 12, 1981, VDO–ARGO mailed to the IRS Service Center in Cincinnati a copy of its income tax return for 1977 (Form 1120F) and its amended income tax returns for the taxable years ending December 31, 1974, 1975 and 1976 (Form 1120X) with an accompanying cover letter outlining what had transpired to date regarding the 1977 net operating loss carryback, describing all of the returns that had been filed and stating that "[t]hese claims hopefully will provide the necessary information so that the refunds can be acted upon."

On September 21, 1981, the IRS notified VDO–ARGO, by letter, that it was disallowing the claim for refund for 1974, 1975 and 1976 which had resulted from the 1977 net operating loss carryback. The reason given

the Government as to the location of the 1977 return.

**2.** The amended return for 1971 carried back the 1974 investment tax credit, and the amended returns for 1972 and 1973 carried back the 1975 investment tax credit.

**3.** On February 21, 1980, the IRS Service Center in Memphis, Tennessee, notified VDO–ARGO, by letter, that the Center was unable to locate

its income tax return for 1977. Following receipt of this letter, the plaintiff allegedly forwarded to the IRS Service Center in Memphis, Tennessee, a copy of its 1977 income tax return. However, the plaintiff has not alleged that it ever complied with the January 14, 1980, letter from the IRS Cincinnati Service Center and forwarded copies of its 1977 income tax return and its 1974, 1975 and 1976 amended income tax returns to the Cincinnati IRS Service Center, as requested.

by the IRS was that the statute of limitations for filing a refund claim had expired on March 15, 1981.

### Discussion

Under section 7422(a) of the Internal Revenue Code of 1954, no suit or proceeding may be maintained in any court for the recovery of any internal revenue tax until a claim for refund or credit has been made in accordance with section 6511. Section 6511(a) provides that:

> Claim for credit or refund of an overpayment of any tax imposed by this title in respect of which tax the taxpayer is required to file a return shall be filed by the taxpayer within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later.

26 U.S.C. § 6511(a). Unless a claim or refund is filed by the taxpayer within the above period of limitation, no credit or refund may be allowed. 26 U.S.C. § 6511(b)(1). Further, if the taxpayer's claim for refund or credit involves a net operating loss, section 6511(d)(2)(A) provided, in 1977, that:

> [I]n lieu of the 3-year period of limitation prescribed in subsection (a), the period shall be that period which ends with the expiration of the 15th day of the 40th month (or the 39th month, in the case of a corporation) following the end of the taxable year of the net operating loss which results in such carryback, or the period prescribed in subsection (c) in respect of such taxable year, whichever expires later; * * *.[4]

In those cases where the taxpayer has properly filed his claim for refund within the periods of limitation set forth in section 6511 above, section 6532(a) provides that a taxpayer, disagreeing with the IRS's determination of his claim, must file suit for recovery of any internal revenue tax within "2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates."

### Claims for Refunds from Tax Years 1974, 1975 and 1976

Plaintiff filed its claims for refund for the years 1974, 1975, and 1976 on June 15, 1981, based on the carryback of the net operating loss for 1977. Section 6511(d)(2) requires that refund claims relating to net operating loss carrybacks must be filed by the 15th day of the 39th month (in the case of a corporation) "following the end of the taxable year of the net operating loss * * * which results in such carryback." Pursuant to section 6511(d)(2), therefore, plaintiff had until the 15th day of the 39th month after December 31, 1977 (the end of the loss year), or until March 15, 1981, within which to file timely refund claims for the years 1974, 1975 and 1976.

Plaintiff, in its response to the Government's Motion to Dismiss, citing as authority this Court's decision in *Furst v. United States,* 230 Ct.Cl. ——, 678 F.2d 147 (1982), argues that it did properly file an informal refund claim within the statute of limitations. This Court recognizes that there exists significant authority for the proposition that a tax refund claim has been filed when the taxpayer has filed any document with the IRS which "puts the Commissioner on notice that a right is being asserted with respect to an overpayment of the tax." *Furst v. United States,* 230 Ct.Cl. at ——, 678 F.2d at 151. However, the Court is unpersuaded that any of the taxpayer's actions here were such that the IRS should have known that VDO–ARGO was asserting its rights with respect to an overpayment of tax for the 1974, 1975 and 1976 tax years.

The plaintiff concedes that its filing of a Corporate Application for Tentative Refund "does not constitute a refund claim under

---

4. With respect to carrybacks arising in taxable years beginning after November 10, 1978, the time period in this Code Section was changed by section 8(a) of Pub.L. No. 95–628 to read: "3 years after the time precribed [sic] by law for filing the return (including extensions thereof)" for the loss year.

Treas.Reg. § 1.6411–1(b)(2)," which emphatically states that:

An application for a tentative carryback adjustment does not constitute a claim for credit or refund * * * [so that] no suit may be maintained in any court for the recovery of any tax based upon such application. The filing of an application for a tentative carryback adjustment will not constitute the filing of a claim for credit or refund within the meaning of section 6511 for purposes of determining whether a claim for credit or refund was filed prior to the expiration of the applicable period of limitation.

See also Crismon v. United States, 550 F.2d 1205 (9th Cir.1977), holding that an application for a tentative refund did not constitute a proper refund claim.

Plaintiff argues, however, that its filing of the Corporate Application for a Tentative Refund in conjunction with the written explanation, provided on the plaintiff's amended tax returns for the years 1971, 1972 and 1973, that the refunds were the result of a 1977 NOL carryback to years 1974, 1975 and 1976, was sufficient to constitute a filing of an informal "claim." This argument is unpersuasive for two reasons. First, the plaintiff states, in its brief in opposition to the Government's motion, that the IRS specifically requested on January 14, 1980, that VDO–ARGO file its amended income tax returns for the tax years 1974, 1975 and 1976 to show the NOL carryback. At that time, plaintiff had about 14 months or until March 15, 1981, to timely file its claims for refund for the years 1974, 1975, and 1976. Plaintiff, however, offers no explanation for its failure to provide this information to the IRS upon its request and within the statute of limitations. A submission of an amended tax return for those years would have constituted the filing of a formal claim. Therefore, while an informal "claim" is sufficient to satisfy section 6511 under certain circumstances, it would be contrary to all of the well established legal precedent cited by the plaintiff if this Court held that a taxpayer could rely on the filing of an alleged informal "claim" while disregarding a specific request by the IRS for submission of a formal claim. Plaintiff's failure to respond with a formal claim was sufficient indication to the IRS that the taxpayer was not asserting any claim with respect to an overpayment of tax for the tax years 1974, 1975 and 1976.

Second, the plaintiff has failed to establish to this Court's satisfaction that the written statement on its amended tax returns for the years 1971, 1972 and 1973, concerning the NOL carryback from tax years 1974, 1975 and 1976, in conjunction with its filing of a Corporate Application for a Tentative Refund, was sufficient to give the IRS adequate notice that a refund of tax was being sought for tax years 1974, 1975 and 1976.

The written component of a valid informal refund claim must give the Commissioner adequate notice that a refund of tax is sought for certain years and of the basis for the claim. Furst v. United States, 230 Ct.Cl. ——, 678 F.2d 147 (1982); Disabled American Veterans v. United States, 227 Ct.Cl. 474, 650 F.2d 1178 (1981); American Radiator & Standard Sanitary Corp. v. United States, 162 Ct.Cl. 106, 318 F.2d 915 (1963); Newport Industries, Inc. v. United States, 104 Ct.Cl. 38, 60 F.Supp. 229 (1945); Hollie v. Commissioner, 73 T.C. 1198, 1212–1217 (1980). The documents relied upon by the plaintiff (i.e., the amended income tax returns for 1971, 1972, and 1973) neither contain any assertions by the plaintiff that its tax was overpaid for the years 1974, 1975, and 1976 nor do they contain demands for a refund of tax paid for the years 1974, 1975, and 1976. The Commissioner is not required to act as a detective and to search for clues as to whether the plaintiff might desire tax refunds for the years 1974, 1975, and 1976, solely because the plaintiff had filed claims for tax refunds for the years 1971, 1972, and 1973 from the carryback of 1974, 1975, and 1976 investment tax credits arising out of a net operating loss for 1977. Angelus Milling Co. v. Commissioner, 325 U.S. 293, 65 S.Ct. 1162, 89 L.Ed. 1619 (1945); Barenfeld v. United States, 194 Ct.Cl. 903, 442 F.2d 371 (1971); American Radiator &

*Standard Sanitary Corp. v. United States, supra,* 162 Ct.Cl. at 114, 318 F.2d at 920. As enunciated by the United States Supreme Court in *Angelus Milling Co. v. Commissioner, supra,* 325 U.S. at 297–99, 65 S.Ct. at 1164–65:

> It is not enough that in some roundabout way the facts supporting the claim may have reached him. The Commissioner's attention should have been focused on the merits of the particular dispute. The evidence should be clear that the Commissioner understood the specific claim that was made even though there was a departure from form in its submission.
>
> \*    \*    \*    \*    \*    \*
>
> But it is not enough that somewhere under the Commissioner's roof is the information which might enable him to pass on a claim for refund.

The cases relied upon by the plaintiff are distinguishable from the instant case, since the written component of the informal claims in the cited cases consisted of a definite instrument, such as a protest letter prior to payment, *Newton v. United States,* 143 Ct.Cl. 293, 163 F.Supp. 614 (1959), an objection on the back of a check issued for payment of the assessed tax, *Night Hawk Leasing Co. v. United States,* 84 Ct.Cl. 596, 18 F.Supp. 938 (1937), a letter agreeing to an installment plan to pay the taxes, *Crenshaw v. Hrcka,* 237 F.2d 372 (4th Cir.1956), and a letter of transmittal accompanied by an executed waiver of restrictions on assessments, *Cumberland Portland Cement Co. v. United States,* 122 Ct.Cl. 580, 104 F.Supp. 1010 (1952), which all put the Com-

missioner on notice that the taxpayer was asserting its right with respect to an overpayment of tax.

### Claims for Refunds from Tax Years 1971, 1972 and 1973

Plaintiff's claims for refund for the years 1971, 1972, and 1973 are governed by section 6532(a)(1) which denies allowance of any refund suit under section 7422 "after the expiration of two years from the date of mailing \* \* \* of a notice of disallowance on the part of the claim to which the suit or proceeding relates." Plaintiff's claims for refund for the years 1971, 1972 and 1973 were filed on October 19, 1979, and were denied, by letter, on March 5, 1980, in which the Commissioner notified the plaintiff that it had two years from the date of the letter to file a tax refund suit in either the District Court or the Court of Claims. Plaintiff failed to meet its deadline of March 5, 1982, and waited until July 9, 1982, to file its petition, after the expiration of the two-year period of limitation provided under section 6532.

### Conclusion

Accordingly, the defendant's motion to dismiss is granted and the Clerk will dismiss the plaintiff's complaint.